UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

**BEVERLY OWEN BARBER,**
    Plaintiff,

v.

**JAVAN PATTON,**
    Defendant.

**Case No. 1:24-cv-1129-CLM**

## MEMORANDUM OPINION

Attorney Beverly Barber lost her state-court lawsuit against Danny Mitchell and is now facing an August 23, 2024, contempt hearing before the Honorable Javan Patton, who presided over the trial. Barber asks this court to issue a writ of habeas corpus that (a) sets aside the $1.92 million judgment in her case against Mitchell, (b) sets aside Judge Patton's order holding Barber in contempt for violating a post-judgment discovery order, and (c) stays the upcoming contempt hearing. (Doc. 1). For the reasons outlined below, the court **DENIES** Barber's petition for a writ of habeas corpus and will close this case.

## BACKGROUND

This is the third case Barber has filed with this court stemming from Barber's ongoing state-court lawsuit against Danny Mitchell for the nonpayment of attorneys' fees. *See Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150. The court recently dismissed Barber's lawsuit against Judge Patton and Mitchell's trial attorney, Charles E. Robinson, that also asked this court to set aside the state-court judgment against her for many of the same reasons she describes in her habeas petition. *See Barber v. Robinson*, N.D. Ala. Case No. 4:23-cv-1621. The court adopts the 7-page procedural background it wrote when dismissing that case, *see id.* (doc. 30), and just summarizes the relevant parts below.

### A. The underlying lawsuit

Barber is an attorney. Barber alleges that she agreed to represent Danny Mitchell for a 30% contingency fee in a case that settled for $500,000. Mitchell did not pay Barber any of his settlement proceeds, so Barber sued Mitchell for $150,000—*i.e.*, 30% of $500,000.

While the case was pending, Barber heard that Mitchell was about to sell his campground for $4 million. So Barber filed a notice of lis pendens with the county probate court, claiming that Mitchell owed her fees in multiple cases that would equal or surpass the value of the campground.

Mitchell says the notice clouded his title, thus spooking the buyer, who backed out of the deal. So Mitchell counterclaimed against Barber, alleging slander of title and tortious interference with a business relationship.

### B. The $1.92 million judgment

Barber's lawsuit proceeded in two parts. First, Judge Patton granted Mitchell summary judgment on his slander of title and tortious interference claims and set those claims for a damages hearing. Most of Barber's complaints stem from that hearing. Among other things, Barber says that Judge Patton denied her request for a jury trial; denied her request to question the proposed buyer, Evan Morris; and, took her pens and pencils so that Barber couldn't take notes and respond to Mitchell's evidence. After the hearing, Judge Patton awarded Mitchell $1.17 million in damages.

Second, Judge Patton empaneled a jury to decide Barber's original breach of contract claim (*i.e.*, the unpaid $150,000 attorneys' fee). The jury found against Barber on breach of contract and instead awarded Mitchell $750,000 on his counterclaim for abuse of the legal process.

Judge Patton thus entered a final judgment of $1.92 million for Mitchell. Barber has appealed the judgment to the Supreme Court of

Alabama. That appeal is pending. *See Barber v. Mitchell and Mitchell's Paradise Campground*, SC-2024-0290 (Sup. Ct. Ala. May 6, 2024) (record last checked on August 19, 2024).

### C. Post-trial discovery and sanctions

Meanwhile, at the trial court level, Mitchell seeks discovery from Barber to ensure payment of the $1.92 million judgment. Barber says that Mitchell also seeks privileged information, such as the names of the investigators she hired to prove her allegations that Mitchell, Attorney Robinson, and Judge Patton conspired to hide the true reason that the campground sale fell through (*i.e.*, the Army Corps of Engineers and Alabama Power refusing to issue a permit). The back-and-forth filings are both numerous and contentious. *See, e.g.*, *Barber v. Mitchell*, St. Clair Cnty. Case No. 75-cv-2021-900150 (Docs. 835, 844, 852, 881, 893, 896, 899, 928, 931, 972, 987, 990, 1000).

Most relevant, Judge Patton set a July 24, 2024, hearing on the pending motions, and Barber failed to appear. So Judge Patton held Barber in contempt, ordered her to pay $3,500 in fines within five days, and ordered her to comply with the court's discovery orders within three days. *Id.* (doc. 951). If Barber violated the latter requirement, she would have to pay $500 per day and could be arrested. *Id.*

Barber didn't comply, so Mitchell asked the court to hold Barber in contempt. Judge Patton set an August 23rd hearing on Mitchell's motion and ordered Barber to appear in person. *Id.* (doc. 1038). That order led Barber to file a slew of motions in various courts aimed at staying the contempt hearing, including the present habeas petition. While Barber asks the court to "vacate the judgment of conviction" in her habeas petition, there is no evidence or allegation that Barber has been criminally convicted of any crime. Nor is there any evidence or allegation that she has been arrested for contempt ahead of the August 23rd hearing.

## DISCUSSION

Barber asks for a writ of habeas corpus under 28 U.S.C. § 2254, which provides in relevant part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus ==on behalf of a person in custody pursuant to the judgment of a State court== only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) ==An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--==
>
> ==(A) the applicant has exhausted the remedies available in the courts of the State; or==
>
> ==(B)(i) there is an absence of available State corrective process; or==
>
> ==(ii) circumstances exist that render such process ineffective to protect the rights of the applicant==.
>
> (b)(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. . . .
>
> (c) ==An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented==.

(highlighting added). The court denies Barber's petition for two reasons, both stemming from the language highlighted above.

### A. Not in Custody pursuant to a state court judgment

The writ is designed to bring prisoners or detainees before a court to decide whether his incarceration is lawful. So when it comes to state court litigants, federal courts can only issue writs for persons "in custody pursuant to the judgment of a State court[.]" 28 U.S.C. § 2254(a). Barber is not in custody pursuant to a state court judgment, so this court is powerless to enter the writ under § 2254(a).

Barber pleads no facts to circumvent the custody requirement. That Barber was required to pay a fine is irrelevant, as fines are different than incarceration. *See Duvallon v. Florida*, 691 F.2d 483, 485 (11th Cir. 1982) ("Where, as here, the judgment of the state court imposes only a fine with no provision for incarceration, appellant's liberty is not restrained, she is not 'in custody' and her bare assertion of constitutional deprivation will not support federal court jurisdiction for § 2254 relief."). And the *possibility* that Judge Patton could order Barber's arrest at the August 23rd hearing does not change the outcome because § 2254 is written in the present tense—*i.e.*, the petitioner must be "in custody" when he files the petition. *See id.* ("Appellant's attempt to cloak her current condition in 'custody' garb because of the potential for incarceration for contempt does not adequately cover the requirements of § 2254").

### B. Failure to exhaust

The court is also required to deny Barber's petition because Barber still "has the right under the law of the State to raise, by any available procedure" the legality of her custody. 28 U.S.C. § 2254. For the sake of argument, let's assume Barber is placed in custody for contempt after the August 23rd hearing, and Judge Patton denies any motion to reconsider. Barber can challenge her custody to the state appellate courts, either by filing a writ of habeas corpus or an appeal under Alabama Rule of Civil Procedure 70(A)(g)(1). *See Ex parte Wall,* 983 So. 2d 380, 381–82 (Ala. 2007) ("[T]he trial court's order of contempt is reviewable by appeal or by a petition for a writ of habeas corpus, if the circumstances satisfy the requirements for a writ of habeas."). Because Barber has yet to exhaust these available state-court remedies, and Barber has failed to allege facts that would show that "circumstances exist that render such process

ineffective to protect the rights of the applicant," the court cannot issue the writ. *See* 28 U.S.C. § 2254(b)(1).

—

Habeas petitions are designed to protect persons already in custody, not to prevent persons from being placed into custody. If Judge Patton places Barber in custody *and* Barber exhausts all state-court remedies to challenge that incarceration, then Barber may seek federal habeas relief. Until then, the court is powerless to issue the writ. *See* 28 U.S.C. § 2254.

### CONCLUSION

For the reasons stated within, the court **DENIES** Barber's petition for a writ of habeas corpus. The court will enter a separate order carrying out this judgment and closing this case.

**DONE** and **ORDERED** on August 19, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE